## VAN HEUSEN v. VAN HEUSEN CHARLES CO. et al.

(Supreme Court, Trial Term, Albany County.   November 8, 1911.)

1. BANKRUPTCY (§ 143*)—INTEREST PASSING TO TRUSTEE.

A remainder interest in an estate contingent upon surviving a life tenant does not pass to the remainderman's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

2. BANKRUPTCY (§ 142*)—FRAUD OF BANKRUPT—RIGHT TO ASSERT.

Any fraud of a bankrupt in assigning an interest in an estate before bankruptcy and in taking a reassignment afterwards is available only to his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 142.*]

3. CORPORATIONS (§ 170*)—STOCKHOLDERS—STATUS.

That the statutes require a director to be a stockholder does not give a director the status of a stockholder, if he in fact owns no stock.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 170.*]

4. CORPORATIONS (§ 139*)—STOCK—TRANSFER—CONSIDERATION.

In an action to set aside a contract by a trustee to convey to a corporation with which he was connected, on the ground of fraud, plaintiff was not entitled to show, on a question whether he was actually a stockholder, that no consideration passed for the trustee's conveyance of stock to his wife.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 139.*]

5. CORPORATIONS (§ 129*)—STOCK—TRANSFER.

Ownership of stock transferred to the transferror's wife becomes complete in her without transfer of the certificates on the corporation's books.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 479, 480; Dec. Dig. § 129.*]

6. CORPORATIONS (§ 182*)—STOCKHOLDERS—INTEREST IN CORPORATE PROPERTY.

A stockholder has no title to or interest in the tangible property of a corporation; his right being merely to share in the profits and in any distribution of assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690; Dec. Dig. § 182.*]

7. CORPORATIONS (§ 174*)—STOCKHOLDER NOT CORPORATE AGENT.

A stockholder is not an agent of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.*]

8. CORPORATIONS (§ 186*)—STOCKHOLDERS—RIGHT TO DEAL WITH CORPORATION.

A stockholder can deal with the corporation the same as a stranger, if the transaction is free from fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 695–701; Dec. Dig. § 186.*]

9. TRUSTS (§ 198*)—TRUSTEE—CONTRACTS—VALIDITY.

A trustee does not deal with himself in contracting to convey property to a corporation in which he is a minority stockholder.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 198.*]

Action by John M. Van Heusen against the Van Heusen Charles Company and others. Complaint dismissed.

Ainsworth & Sullivan, for plaintiff.
Hun & Parker, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
131 N.Y.S.—26

RUDD, J. This action is brought to set aside a contract of sale covering certain real estate in Albany, made by defendant George W. Pierce, as trustee, for Arabella M. Van Heusen, under the will of Theodore V. Van Heusen, deceased, with the defendant the Van Heusen Charles Company, on the ground that Pierce, as trustee, had done an illegal act in agreeing to sell the property, which he held in trust, to a corporation in which he was a stockholder, and of which he was a director and treasurer.

The property in question is a five-story building, used for business purposes, occupied by the Van Heusen Charles Company, and was occupied by Van Heusen & Charles, the predecessors of that company, for many years.

Theodore V. Van Heusen, one of the copartners in the firm of Van Heusen & Charles, died in 1893, leaving a widow and several children, and owning at the time of his death an undivided one-half interest in the real estate above mentioned. By his will he disposed of two-thirds of his estate practically by dividing the same among his children then living. One-third of the estate he directed to be set apart for the benefit of his widow, Arabella M. Van Heusen, the income of which was to go to her during her life. She is still living. The will provided that this one-third which had been set apart was to go to his children who might be living at the time of the death of his widow, the life tenant. In the event that any of his children should die before the death of his widow, dying without issue, then the share of such child in the one-third interest was to be divided between the surviving children. If any child died leaving issue, however, the share of such child was to go to his child or children.

William Manning Van Heusen, one of the children, died leaving no child. There are four children at this time living, and two grandchildren, namely: The plaintiff, John M. Van Heusen, the defendants, Charles M. Van Heusen, Richard Fletcher Van Heusen, and Alpha T. Van Heusen, and also Victor Lamb and Theodore Lamb, grandchildren.

The defendant, Charles E. Flint, has acquired the undivided one-fifth interest of the grandchildren.

The plaintiff has a one-fifth interest in the undivided one-half of the property, which interest is contingent upon his surviving his mother.

The defendant Pierce qualified as executor of the will of Theodore V. Van Heusen, his accounts as such executor were judicially passed, and he alone qualified as trustee named in the will, and at the time in question was acting as such trustee.

The contract of sale to the Van Heusen Charles Company was made in June, 1906. Daniel D. T. Charles, a member of the old copartnership of Van Heusen & Charles, died seised of an undivided one-half of the real estate in question. Frank T. Charles, as executor under the will of Daniel D. T. Charles, his father, made a contract with the Van Heusen Charles Company, in June, 1906, agreeing to convey an undivided one-half interest belonging to the Charles Estate, to the Van Heusen Charles Company for the same consideration and

under the same terms and conditions as were provided in the contract made by Mr. Pierce, as trustee under the will of Theodore V. Van Heusen, with the Van Heusen Charles Company, in substance.

These two agreements or contracts of sale, one by the legal representative of the Charles Estate, and the other by the legal representative of the Van Heusen estate, provided for a sale and conveyance of the whole property to the Van Heusen Charles Company, for the consideration or purchase price of $75,000; each estate to receive $37,500. The other conditions of the sale with reference to the time and manner of payment of this sum are immaterial to the question here under consideration.

When this contract of sale was entered into, the capital stock of the Van Heusen Charles Company consisted of 1,000 shares, of which Charles M. Van Heusen, the president of the company, owned a majority; defendant, Alpha T. Van Heusen, 66 shares; defendant Charles E. Flint, 72 shares; and the estate of D. T. Charles, 10 shares.

Upon the stock ledger of the company at the time of the making of the contract in question, in a list of the stockholders of the company appeared "G. W. Pierce, 139 shares." The holdings of defendant Pierce in the Van Heusen Charles Company were evidenced by three stock certificates, two for 50 shares each, and one for 39 shares. These three certificates were indorsed for transfer on the 12th day of September, 1904, to Isabella L. Pierce, the wife of George W. Pierce, and the three certificates were handed by Pierce to his wife. After the 12th day of September, 1904, up to and at the time of the making of the contract of June, 1906, no other certificates were issued to or held by defendant George W. Pierce.

The certificates covering the 139 shares, indorsed for assignment and transfer by defendant Pierce to his wife, were never transferred of record upon the books of the company.

After the alleged transfer and delivery of the 139 shares by Pierce to his wife, the defendant Pierce continued to act as director of the company, and was, at the time of making the contract, its treasurer.

From the time of the organization of the Van Heusen Charles Company it had occupied the property under leases, one from the estate of Charles, the other from the Van Heusen estate.

In April, 1907, the plaintiff filed a petition in bankruptcy. He had previously assigned his interest in the estate—that means his interest in the undivided one-half of the real estate—to G. Herbert Cone, an attorney of Albany.

The plaintiff was discharged in bankruptcy, and subsequently G. Herbert Cone reassigned to the plaintiff whatever interest he had in the property.

The defendants plead and contend that the acts of the plaintiff in conveying what interest he had in the property prior to being adjudged a bankrupt, and taking a reconveyance of the same subsequent to his discharge from bankruptcy, was in fraud of bankruptcy, and the defendants contend that the trustee in bankruptcy became vested

with the title to this interest, and that therefore the plaintiff here is not the real party in interest.

The complaint alleges that the sale or agreement to sell entered into by the defendant Pierce, as trustee, was made with a design to greatly benefit the said Pierce, who was at such time and still is an officer of and one of the principal stockholders and managers of the Van Heusen Charles Company; that it was not for the best interests of the estate of which he was trustee; that it was greatly detrimental to the interests of the plaintiff and his surviving brothers, excepting Charles M. Van Heusen; that it was also detrimental to the interests of the said Charles E. Flint; that it was in fraud of the rights of the plaintiff, and all other persons mentioned, excepting Charles M. Van Heusen; that it was made at an utterly inadequate price, and with the intent to defraud the plaintiff out of his just rights and interests in the property.

Upon the trial the plaintiff did not attempt to show that the sale was for an inadequate price, the evidence did not show that it was detrimental to the interests of the other defendants, save Charles M. Van Heusen; Alpha T. Van Heusen, defendant, brother of the plaintiff, approved of the sale, by the evidence which he gave upon the trial, as also did the defendant Charles E. Flint; the defendant Richard Fletcher Van Heusen not answering or appearing.

[1] The plaintiff is the real party in interest. His interest in his father's estate was contingent, and would not pass to the trustee in bankruptcy. The contingency "is that only those members of the class shall enjoy the remainder in possession who are alive at the death of the life tenant."

[2] The defenses set up under this phase of the case in any event would, it seems, only be available to a creditor.

The conveyance made by plaintiff of his interest in the estate to Mr. Cone was evidently for services rendered by Cone, somewhat indefinite in their nature, the value of which was not clearly brought out; but, however that may be, this conveyance seemed to be good, and, whether it conveyed to Cone an interest or not, whatever he had or thought he had, he reconveyed the same to the plaintiff, putting him back in the position in which he was before he made the assignment to Cone, investing him with whatever contingent interest he had in the estate, concerning which, as above indicated, no question can now be raised by these defendants.

The question, therefore, comes clearly and sharply as to the validity of the contract of sale, because of the relation which Pierce, the trustee, at the time of making the contract of sale, bore to the Van Heusen Charles Company by reason of the fact that he at least had been a stockholder, and that at the time of the making of the contract of sale his name appeared upon the stock ledger as the holder of 139 shares of the company's capital stock.

The allegation of fraud is not sustained. The evidence does not show that Pierce was greatly benefited by the sale, or benefited at all. There is no proof that it was not for the best interests of the estate;

in fact, the evidence is that the sale was for an adequate price, and, the price being adequate, a sale was to the advantage of the estate, rather than an ownership of an undivided half interest in real estate.

[3] The provision of the statute requiring that a director must be a stockholder does not mean that a person who is voted for as a director, who is published to the world as a director, who acts as such, taking a part in the management of the corporation, is in fact, a stockholder, when no stock has ever, as a matter of fact, been issued to him.

It means that a person, to properly qualify for directorship, must under the law be a holder of capital stock, his acts as such director only, when not a stockholder, may be void, and of no legal effect, and other penalties may follow; but it cannot be said, in face of the fact that he has no stock, that no stock has ever been issued to him—that because he acts as a director he is a stockholder.

That is not exactly the question here, for stock had been issued to the defendant Pierce. It is admitted that he was a stockholder, at least up to September, 1904. It then appears, as above stated, that he executed an assignment of transfer of the stock in his name to his wife, and that he delivered to her the script. .

[4] It is contended that the evidence does not show that any consideration passed for this conveyance of stock. So far as the parties to this issue are concerned, that question cannot be raised. He had a right to give that stock to his wife. If he did give it to her, she became the owner of it, and was under the evidence possessed of the certificates of such ownership.

[5] The ownership could be complete in the wife, without a transfer of the certificates upon the books of the company.

The explanation by defendant Pierce of the fact that he acted subsequent to the 12th day of September, 1904, when the stock was transferred by himself to his wife, as the director of the company, is that the matter had entirely escaped his memory; that is, the transfer of the stock. He testifies that he was under an impression that he was still a stockholder, and that when he learned of the fact, or recollected that his stock had been at a previous date transferred to Mrs. Pierce, he then qualified himself to become a director or stockholder in the company by the purchase from his wife of five shares of her stock.

It is apparent that if there had been no transfer by defendant Pierce of the 139 shares of stock to his wife, and that he had been without any question a holder of those shares, he would have made the contract as trustee, with the Van Heusen Charles Company, just as he did make it. In other words, it is apparent from the evidence that Pierce was acting, so far as the Van Heusen Charles Company was concerned, in good faith.

The representative of the Charles estate, which owned an undivided one-half of the property, was insistent upon a sale of that undivided one-half. The executor of the estate, Frank T. Charles, called upon defendant Pierce for the purpose of inducing the Van Heusen Charles Company to make the contract.

The consideration of the transfer of the Charles undivided one-

half interest was $37,500. Frank T. Charles, as executor, made a contract to that effect. At the time he made the contract, he was a holder of 10 shares of the capital stock of the Van Heusen Charles Company.

The premises had been occupied by the Van Heusen Charles interests as a place of business for over 50 years. It is fair to assume that the property was quite as valuable to that concern as to any possible purchaser. The representative of the Charles estate, and Mr. Pierce, as trustee of the Van Heusen estate, agreed as to the value of the property at $75,000.

The testimony taken over the objection of the plaintiff as to the value of neighboring business property shows that $75,000 was a fair and adequate consideration for the sale of the property.

Defendant Pierce, it must be remembered, was not, as trustee, dealing with himself individually. He did not accomplish a sale of the property to himself directly or indirectly. He was at the worst, assuming the ownership of the 139 shares of stock being in him, dealing as trustee, with a corporation in which he was a stockholder, and of which he was a director.

It seems, however, that the fact was that he was not at the time of the execution of the contract of sale a stockholder. He had assigned and delivered the certificates of stock. He testifies that the assignment and delivery of the certificates was not by him made in contemplation of death, although he was at the time ill; that the transfer was made, in fact, so that it would not be necessary for his wife to probate his will in order to pass the title of the stock in the event of his death then or at any other time.

[6] A stockholder has no title or interest in the tangible property of the corporation. The holding or ownership of shares gives the owner a right to his proportion of the profit while a corporation is a going concern, and entitles him to his distributive part in case of a distribution of the assets upon dissolution.

[7] The legal title of the property is in the corporation, not in the stockholder, and a stockholder is not an agent of the corporation.

[8] A stockholder has a right to deal with a corporation in the same manner as a stranger has, provided the transaction is free from fraud, and in so doing he acquires the same rights, he incurs the same liabilities as a stranger, where the transaction is proper, fair, and in good faith. He is not a trustee of the corporation, and rests under no obligation to serve the corporation. He may lease or sell property to the corporation, or purchase or take a lease from the corporation.

[9] When, therefore, Mr. Pierce, as trustee, was contracting to sell property, which he held as such, to the corporation, in which, even assuming his ownership of a minority interest, he was not dealing with himself directly or indirectly.

The courts are jealous of the interests and the rights of those for whom the trustee acts, and, in many cases where the good faith of the trustee has been apparent, that would not excuse or justify a transaction by the trustee with himself directly or indirectly, and such transactions have been found to be in violation of the law.

It is the duty of the court to scrutinize these transactions with the greatest care, to the end not only that the plaintiff's rights may be protected and secured, but also that injustice may not be done to the defendant corporation, and the parties interested therein, by such a strict adjudication of these questions along technical lines, based upon the assumption that under no circumstances and upon no theory can it be possible for a man, situated as Mr. Pierce found himself to be, to do that which everybody concerned considered to be for the best interests of all concerned, and of the estate of which he was trustee, save only the plaintiff here, whose testimony upon the trial indicated an unfriendly spirit and attitude towards one of the defendants in the case.

The Charles estate owned one-half of this property, which one-half was admittedly of the value of $37,500.

Frank T. Charles, the executor, owned 10 shares of the capital stock of the corporation worth $1,000. He wanted to effect a sale of the Charles interest to the company, and did make a contract of sale on the basis of the value above stated. Can it be said that he was induced thus to dispose of the property owned by the estate of his father, because he had $1,000 invested in the company to which the sale was made?

The sons of Theodore V. Van Heusen, defendants here, who testified upon the trial, approve of the sale, of the manner in which it was made, and of the consideration agreed to be paid.

If the sale had been to Pierce individually, then, whatever his motive or consideration realized, the court must say that his act was void.

The trustee, Pierce, has not violated any law, nor done any wrong, He has not wasted the estate of which he was trustee; neither has he given to the company, with which he has been connected, anything at the expense of the Van Heusen estate; and the interests of this plaintiff have not been rendered less valuable, nor jeopardized.

Judgment should be entered dismissing the complaint.